UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSEPH LENOWSKY,

      Plaintiff,

v.                                                                                          Case No. 8:20-cv-1004-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

      Defendant.

_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1955, has a high school diploma, and has past relevant work experience as a carpenter.  (R. 44, 47, 72).  The Plaintiff applied for DIB and SSI in March 2016, alleging disability as of August 2015 due to migraines, dizzy spells, and a traumatic brain injury.  (R. 73, 84, 245, 252).  The Social Security

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

Administration denied the Plaintiff's applications both initially and on reconsideration.  (R. 10).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in October 2018.  (R. 36–71, 186).  The Plaintiff was represented by counsel at that hearing and testified on his own behalf.  (R. 39, 44–64).  A vocational expert (VE) also testified.  (R. 64–70).

In a decision issued in February 2019, the ALJ determined that the Plaintiff: (1) met the insured status requirements through the end of March 2016, and had not engaged in substantial gainful activity since his alleged onset date in August 2015; (2) had the severe impairments of vertigo; a clavicle fracture; degenerative joint disease of the shoulder; a cognitive impairment secondary to a traumatic brain injury; facial trauma with a fracture of the temporal bone; and a fracture of the right wrist, status-post open reduction internal fixation; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform medium work subject to certain limitations; and (5) based on the VE's testimony, could not engage in his past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy.  (R. 10–23).  In light of these findings, the ALJ concluded that the Plaintiff was not disabled.  (R. 23).

The Appeals Council denied the Plaintiff's request for review.  (R. 1–3).  Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[2] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).[3] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). Although the claimant has the burden of

---

[2] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

[3] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

proof through step four, the burden temporarily shifts to the Commissioner at step five. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove that he cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.  In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant."  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing.  42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted).  In evaluating whether substantial evidence supports the Commissioner's decision, the Court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence."  *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir.

2005)).  "[W]hile the court [accords] deference to the [Commissioner's] factual findings, no such deference is given to [her] legal conclusions."  *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

### III.

The Plaintiff raises two main challenges on appeal: (1) the ALJ's RFC findings that the Plaintiff could perform medium work is not supported by substantial evidence; and (2) the ALJ did not properly consider the Plaintiff's subjective complaints of pain and other symptoms.  (Doc. 25 at 23–32, 42–45).  Each of these challenges will be addressed in turn.

### A.

At step four of the sequential evaluation process, the ALJ must assess the claimant's RFC and his ability to engage in his past relevant work.    *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945.  To do so, an ALJ must decide based upon all the relevant evidence before him what a claimant can do in a work setting despite any physical or mental restrictions caused by his impairments and related symptoms.    *Id.* §§ 404.1545(a)(1), 416.945(a)(1).    In arriving at this determination, the ALJ must review the medical opinions of record, as well as all the claimant's medically determinable impairments and the total limiting effects of each. *Id.* §§ 404.1520(e), 404.1545(a)(2), 416.920(e), 416.945(a)(2); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole").

5

An ALJ, however, need not expressly address every piece of evidence in the record before determining a claimant's RFC. *See Stowe v. Soc. Sec. Admin., Comm'r*, ___ F. App'x ___, 2021 WL 2912477, at *4 (11th Cir. July 12, 2021) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Rather, the ALJ need only base his RFC assessment on the claimant's condition "taken as a whole," *Jamison*, 814 F.2d at 588, after considering all the pertinent information presented, 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920, 416.945(a)(2). As long as the Court can discern from the ALJ's decision that he evaluated all the relevant evidence before him, the final responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(1).

Here, as summarized in the ALJ's decision, the Plaintiff suffered a traumatic brain injury after falling from a ladder in August 2015, after which he underwent surgery on his skull, spent several weeks in the hospital, and completed two weeks of inpatient rehabilitation. (R. 13–21). The Plaintiff subsequently sought treatment from several medical practitioners, including his primary care physician, Dr. Douglas Franke; a rehabilitation specialist, Dr. Sheryl Katta-Charles; and a neuropsychologist, Dr. Samantha Backhaus. *Id.* at 17–18. He was thereafter able to drive, conduct various household activities, and ride a motorcycle. *Id.* at 18. A little over two years after his fall, in October 2017, the Plaintiff injured his shoulder in a motorcycle accident. *Id.*

In making his RFC findings at step four, the ALJ determined that the Plaintiff could engage in medium work, with some restrictions to address his vertigo, anxiety, traumatic brain injury, anger management issues, and degenerative joint disease in his

shoulder that resulted from either his fall or his motorcycle accident.  (R. 13–21).  Specifically, the ALJ accounted for the Plaintiff's vertigo by precluding him from climbing ladders, ropes, or scaffolds; limiting him to frequently climbing ramps and stairs, as well as frequently balancing and stopping; restricting him to occasionally crouching, kneeling, and crawling; and instructing him to avoid moderate exposure to dangerous moving machinery, concentrated exposure to loud noise, and any exposure to unprotected heights.  (R. 19).  The ALJ also credited the Plaintiff's complaints of anxiety by confining him to "no more than occasional interaction with the public in a work setting."  (R. 20).  And, based on the Plaintiff's history of traumatic brain injury, the ALJ limited him to "simple, routine tasks in work at a flexible pace, involving only end of the day production requirements, with no hourly or other periodic production quotas."  (R. 20).

On appeal, the Plaintiff raises multiple arguments in support of his challenge that the ALJ's RFC findings lack sufficient support in the record.  In particular, the Plaintiff claims that (1) the ALJ ignored evidence which did not support his findings; (2) the ALJ mischaracterized the evidence upon which he did rely; (3) the ALJ neglected to consider that the Plaintiff was disabled for a "closed period" during the first year following his fall;[4] (4) the ALJ did not account for the Plaintiff's "severe hearing loss;" (5) the ALJ should have obtained opinion evidence from either an

---

[4] In a closed period case, the ALJ determines whether the claimant "was disabled for a finite period of time which started and stopped prior to the date of [the ALJ's] decision."  *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987).

examining or treating physician or ordered a consultative examination before arriving at his RFC determination; and (6) based on these claims of error, the ALJ's hypotheticals to the VE were improper.[5]   As explained below, all of these arguments lack merit.

1.

The focus of the Plaintiff's first argument is on the ALJ's alleged failure to consider all the medical records purportedly bolstering a finding that the Plaintiff could not engage in medium work, including those of his primary care physician, Dr. Franke; his rehabilitation specialist, Dr. Katta-Charles; his neuropsychologist, Dr. Backhaus; and a consulting neuropsychologist, Dr. Frederick Unverzagt.  (Doc. 25 at 23–32).  While the Court will separately address each of these contentions, it notes at the outset that they all suffer from the same defect.  Despite citing portions of the record that the ALJ did not reference in his decision, the Plaintiff does not meaningfully argue or present facts demonstrating how his allegedly reduced abilities

---

[5] The remaining arguments raised by the Plaintiff lack any real analysis and are therefore waived. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (finding that an issue was waived because the claimant did not elaborate on the claim or cite authority); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived."); *Brinson v. Comm'r of Soc. Sec.*, 2019 WL 5332715, at *2 n.3 (M.D. Fla. Sept. 30, 2019) (finding that a conclusory argument was "perfunctory" and "therefore waived") (collecting cases), *report and recommendation adopted*, 2019 WL 5326693 (M.D. Fla. Oct. 21, 2019).  For instance, the Plaintiff asserts in one sentence that the ALJ "ignore[ed] probative evidence relating [to his] . . . anger issues and lack of stamina" (Doc. 25 at 26) but he neither points to any such evidence to bolster this argument, nor does he show how that evidence compels a finding of disability.  The Plaintiff similarly argues at another point—without any other explanation—that the ALJ "failed to make the function-by-function assessment that properly addressed [his] ability to perform work related activities."  (Doc. 25 at 31).

resulted in functional restrictions omitted from the ALJ's RFC determination.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 877–78 (11th Cir. 2012) (stating that a claimant bears the burden of showing "the effect of [an] impairment on [his] ability to work") (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1546–47 (11th Cir. 1986)).  Because of this deficiency, as well as for the reasons set forth below, the Plaintiff's contention that the ALJ's step four findings are inadequately grounded cannot stand.  *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2018) (per curiam) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion.") (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)).

Turning to the first set of records upon which the Plaintiff relies (i.e., those of Dr. Franke), the Plaintiff posits that the ALJ neglected to consider the Plaintiff's reports to Dr. Franke that he suffered from dizziness and memory problems between February 2016 and June 2018.  (Doc. 25 at 25).  By way of example, the Plaintiff points to a March 2016 note by Dr. Franke not referenced in the ALJ's decision, which indicates that the Plaintiff "[c]ontinues to struggle with dizziness and memory problems."  (Doc. 25 at 25) (citing R. 1170–71, 1190).  This argument is unavailing.

In his decision, the ALJ reviewed similar entries by Dr. Franke, including (1) the Plaintiff's complaint of vertigo during a visit in March 2017; (2) the Plaintiff's report of "occasional dizziness" in August 2017; and (3) the Plaintiff's comment in June 2018 that he had not experienced any change over the past year with respect to

9

his dizziness.  (R. 19).  In addition, the ALJ identified records from Dr. Katta-Charles, which revealed that the Plaintiff reported vertigo in February and March of 2016.  (R. 18–19).  Thus, even if the ALJ did not expressly refer to all of Dr. Franke's notes, his decision demonstrates that he considered the Plaintiff's condition as a whole and did not simply ignore those records of Dr. Franke which did not buttress his findings.  *Dyer*, 395 F.3d at 1211 (holding the ALJ is not required to cite every piece of record evidence where the ALJ considered the Plaintiff's record as a whole).

The Plaintiff's reliance on certain records of Dr. Backhaus that are not mentioned in the ALJ's decision fails too.  The first of these records is a June 2016 note by Dr. Backhaus indicating that the Plaintiff was experiencing both dizziness and balancing issues, and often needed to sleep upright.  (Doc. 25 at 26).  Contrary to the Plaintiff's suggestion, however, the ALJ addressed Dr. Backhous's underlying report containing this note (R. 20) (citing R. 1128–29), and also explicitly considered the Plaintiff's complaint to Dr. Backhaus that "his dizziness was worse, and that he ha[d] to hold onto a wall for balance."  *Id.*

The second record is a June 2016 report by Dr. Backhaus in which he advised that the Plaintiff would be a "really appropriate candidate to participate in [a] brain injury coping skills group."  (Doc. 25 at 18) (citing R. 1129).  Notably, however, the Plaintiff does not cite any evidence demonstrating the nature and scope of the "brain injury coping skills group," nor does he explain how Dr. Backhaus's remark warrants a finding that he could not engage in medium work.  (Doc. 25 at 26).

10

The Plaintiff's efforts to establish error based on various documentation compiled by Dr. Katta-Charles that is not referenced in the ALJ's decision fares no better.  (Doc. 25 at 27).  In February 2016, Dr. Katta-Charles cleared the Plaintiff to return to a "work hardening" program with restrictions for climbing, noting that his vertigo was "well controlled except when he perform[ed] an exaggerated flexion/extension movement."  (R. 544–45).  The next month, Dr. Katta-Charles found that the Plaintiff's vertigo was exacerbated by new medication he was taking and recommended that he cease taking that drug, as well as "hold off" on the work conditioning program until his vertigo improved.  (R. 546–47).  As Dr. Katta-Charles later observed, her "plan was to . . . refer [the Plaintiff] to the brain injury program, and [have him] stay off work until the brain injury program was completed."  (R. 1145).[6]  In June 2016, Dr. Katta-Charles additionally referred the Plaintiff to speech and cognition therapy.  (R. 1123).

There are a number of problems with the Plaintiff's reliance on this record evidence.  With respect to Dr. Katta-Charles's reference to a brain injury program, the Plaintiff again does not explicate—and the Court cannot discern—what the nature and scope of this program is and how this recommendation undermines the ALJ's RFC findings.  Moreover, the ALJ's decision shows that he took into account the bulk of Dr. Katta-Charles's notes, either by addressing that documentation or by considering

---

[6] The parties agree that select treatment notes for Dr. Katta-Charles (as well as for Dr. Backhaus) are not contained in the record but are summarized by Dr. Unverzagt in his neuropsychological evaluation.  (Doc. 25 at 14 n.2).

Dr. Unverzagt's summary of the same.  By way of example, the ALJ included in his decision a portion of the August 2016 note from Dr. Katta-Charles referring to the Plaintiff's complaint of "continued vertigo" and continued "difficulties in 'coping with the injury from an emotional perspective.'"  (R. 19) (quoting R. 1145).  The ALJ also described a fall that the Plaintiff reported to Dr. Katta-Charles in March 2016 after starting a medication that increased his dizziness.  (R. 18).

The final medical record the Plaintiff asserts the ALJ overlooked is an August 31, 2016, opinion by Dr. Unverzagt, in which Dr. Unverzagt evaluated the Plaintiff in connection with a worker's compensation claim and recommended that he complete a psychotherapy course.  (Doc. 25 at 29); (R. 1161–67).  The Plaintiff now claims that "Dr. Unverzagt did not feel [the Plaintiff] was able to return to work until this additional psychotherapy [was] completed."  (Doc. 25 at 29).  This contention similarly does not survive scrutiny.

As an initial matter, contrary to the Plaintiff's suggestion, Dr. Unverzagt stated that the Plaintiff could, in fact, return to work *while* engaged in psychotherapy.  (R. 1166).  In particular, he offered that "[a] short course of psychotherapy, focused on return to work, that *continues through the early parts of re-entry to work* could be helpful for [the Plaintiff]."  *Id.* (emphasis added).

In addition to this flaw in the Plaintiff's argument, the ALJ considered Dr. Unverzagt's report and assigned it little weight because "Dr. Unverzagt did not specify what, if any, vocational limitations result[ed] from [the Plaintiff's] impairments."  (R. 21).  Significantly, the Plaintiff does not challenge this assessment.

12

In sum, the Plaintiff fails to identify evidence not listed in the ALJ's decision that warrants a conclusion he suffered from greater restrictions than the ALJ found in his RFC determination.  And a fair reading of the ALJ's decision demonstrates that he thoroughly evaluated the relevant evidence of record, as well as all the Plaintiff's impairments and the total limiting effects of each.  *Dyer*, 395 F.3d at 1211.  The Plaintiff cannot establish an ALJ has committed reversible error simply by arguing that the ALJ neglected to consider restrictions caused by his afflictions when he himself does not explain how those afflictions inhibit his ability to engage in basic work activities.  *Smith*, 501 F. App'x at 877–78.

## 2.

The Plaintiff's next argument in support of his first challenge relates to the records that the ALJ did rely upon in his decision.  The first of these records is a February 2016 opinion by Dr. James Miller—who operated on the Plaintiff after his fall—that the Plaintiff could be released "without restrictions."  (Doc. 25 at 28); (R. 1089).  The Plaintiff speculates that the ALJ improperly concluded from this prognosis offered by Dr. Miller that the Plaintiff could perform medium work.  (Doc. 25 at 28).

The trouble with the Plaintiff's theory is that the ALJ assigned only "some weight" to Dr. Miller's opinion because "Dr. Miller did not appear to consider the [Plaintiff's] vertigo and other lasting effects of his impairments."  (R. 20).  And, importantly, the Plaintiff does not contest the ALJ's evaluation of Dr. Miller's recommendation.

The Court is likewise not persuaded by the Plaintiff's assertion that the ALJ mischaracterized records from the Plaintiff's occupational therapist, Jeff Hanson, who examined the Plaintiff in December 2015. (Doc. 25 at 28). In his decision, the ALJ explained that Mr. Hanson "noted the [Plaintiff] needed to improve his 'activity tolerance and strength,' but that strength, active range of motion, and passive range of motion in his left and right upper extremities were 'within functional limits.'" (R. 17) (citations omitted). The Plaintiff now avers that Mr. Hanson "actually stated that [the Plaintiff] still had endurance difficulty, strength deficits, pain and needed to improve his activity tolerance." (Doc. 25 at 28) (citing R. 708–09). This argument is without foundation.

As a threshold matter, by the Court's view, Mr. Hanson concluded both that (1) the Plaintiff displayed strength and range of motion within functional limits and (2) the Plaintiff had issues with deficits, pain and activity tolerance. *Id.* Thus, notwithstanding the Plaintiff's differing interpretation of the ALJ's comment about Dr. Hanson's records, it appears that the ALJ fairly described Mr. Hanson's assessments. (R. 705–08).

The Plaintiff alternatively posits—without support—that Mr. Hanson's findings of a normal range of motion and strength in the Plaintiff's upper extremities "in no way translate[ ] to an ability to sustain medium work for eight hours a day if his endurance and activity tolerance was poor." (Doc. 25 at 28). This contention amounts to nothing more than mere conjecture and does not demonstrate the Plaintiff's inability to engage in medium work. *See Manzo v. Comm'r of Soc. Sec.*, 408 F. App'x 265, 269

(11th Cir. 2011) (per curiam) (declining the claimant's invitation to guess—without a basis in the record—as to why her impairment imposed greater limitations than the ALJ assessed); *Thomas v. Berryhill*, 2018 WL 4558193, at *3 (N.D. Fla. Sept. 21, 2018) ("[A claimant] cannot establish reversible error through speculation, or unsupported conclusions, regarding limitations that might be caused by [her] impairments.").

3.

In a further effort to bolster his first challenge, the Plaintiff separately argues that the ALJ did not identify the date on which his condition improved enough to perform medium work.  The Plaintiff hypothesizes in this regard that he was unable to engage in such "work from August 15, 2015, the date of his accident[,] through at least August 15, 2016" and thus is eligible to receive benefits for that closed period.[7] (Doc. 25 at 29).  The Plaintiff predicates this contention on (1) the August 1, 2016, note by Dr. Ketta-Charles that the Plaintiff should "stay off work until he had completed the brain injury program;" and (2) an August 1, 2016, opinion by Dr. Backhaus that the Plaintiff had not reached maximum medical improvement.  *Id*. According to the Plaintiff, this evidence "could reasonably indicate [he] would still be disabled [as of] August 15, 2016," i.e., a period of twelve months from his fall.  *Id*. This argument fails.

The Court notes at the outset that the Plaintiff did not raise this claim before either the ALJ or the Appeals Council, nor does he cite any legal authority to bolster

---

[7] The Plaintiff's fall actually occurred on August 21, 2015.  (R. 835).

this proposition on appeal.  There is case authority in this District that a claimant who does not raise an argument at the ALJ hearing is foreclosed from pursing that argument on appeal.  *See, e.g., Gray v. Comm'r of Soc. Sec.*, 2019 WL 3934441, at *6 n.10 (M.D. Fla. Aug. 20, 2019) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004)); *Crider v. Comm'r of Soc. Sec.*, 2018 WL 3628847, at *5 (M.D. Fla. June 12, 2018) (citing *Bechtold v. Massanari*, 152 F. Supp. 2d 1340, 1347 (M.D. Fla. 2001), *aff'd*, 31 F. App'x 202 (11th Cir. 2001)).

Irrespective of this issue, it is implicit in the ALJ's finding that the Plaintiff was not disabled at any time during the relevant time frame that he was also not disabled during any closed period within that time frame.  As a result, the ALJ did not err in failing to explicitly consider the closed period identified by the Plaintiff.  *See Jones v. Comm'r of Soc. Sec.*, 181 Fed. App'x 767, 773 (11th Cir. 2006) (finding that the ALJ did not err in failing to consider a closed period because the ALJ determined the claimant was not disabled at any time during the entire period and that determination was supported by substantial evidence); *McDaniel v. Astrue*, 2009 WL 2777716, at *10 (S.D. Ga. July 31, 2009) ("When the ALJ's opinion is supported by substantial evidence and he or she determines that a claimant is not disabled for any time during that entire period, the ALJ does not err in failing to consider a claimant's eligibility for a closed period of disability.") (citing *Jones*, 181 Fed. App'x at 773).

Even were that not the case, for the reasons explained above, Dr. Katta-Charles's reference to a "brain injury program" does not establish that the Plaintiff was disabled as of August 2016.  As for Dr. Backhaus's opinion, it appears from Dr.

16

Unverzagt's summary of that opinion that it pertained primarily to the Plaintiff's mood.[8]  In particular, Dr. Unverzagt described that opinion as follows: "On August 1, 2016, a progress note by Dr. Backhaus indicated continued concern about [the Plaintiff's] return to work and dizziness.  Dr. Backhaus was of the opinion that [the Plaintiff] was not at [maximum medical improvement].  She recommended continued follow-up every 4-6 weeks until *mood stabilization* occurred."  (R. 1164) (emphasis added).

The Plaintiff does not articulate how Dr. Backhaus's concern about the Plaintiff's "mood stabilization" and Dr. Katta-Charles's reference to a "brain injury program" undercut the ALJ's RFC determination.  Nor does he offer any explanation as to how these medical records are tied to his particular impairments or compel a finding of disability.  These deficiencies are significant since the ALJ addressed and accounted for the Plaintiff's mental impairments in his RFC findings, confining him to simple, routine tasks, no hourly or periodic quotas, and only occasional interaction with the public. (R. 16).  As a result, the Court cannot accept the Plaintiff's speculation that these records render the ALJ's step four findings to be fatally flawed.

4.

The Plaintiff's next contention is that the ALJ erred by not considering his "severe hearing loss."  (Doc. 25 at 29–30).  The Plaintiff surmises in this regard that his hearing impairment could impact his ability to perform medium work and adds

---

[8] As noted previously, select treatment notes for Drs. Backhaus and Katta-Charles are not found in the record but are summarized in Dr. Unverzagt's neuropsychological evaluation.  (Doc. 25 at 14 n.2).

that "[t]here is no way to know since the ALJ failed to include it in his hypothetical." *Id*.  This contention is unfounded as well.

To begin, the record contains conflicting information regarding the Plaintiff's ability to hear.  When the Plaintiff sought treatment for hearing loss in December 2015, for instance, an examination showed that he had "bilateral normal sloping to severe sensorineural hearing loss" and that he "would be a good candidate for hearing aids." (R. 1030–32).  At other points in the record later on, however, the Plaintiff denied having any difficulty hearing, *see, e.g.*, (R. 1171, 1183, 1188, 1190), and did not identify hearing loss in his application as a basis for his disability (R. 73, 84, 245, 252).

Regardless of this issue, the Plaintiff's conjecture that his hearing loss prevents him from engaging in medium work—without more—is not a basis for reversal in any event.  *See Manzo*, 408 F. App'x at 269; *Thomas*, 2018 WL 4558193, at *3.

5.

The Plaintiff's next argument in support of his first challenge is that the ALJ erred by arriving at his RFC determination without securing either opinion evidence or a physical RFC from an examining or treating physician.  (Doc. 25 at 30).  This argument is unpersuasive.

In support of his contention that the ALJ neglected to obtain opinion evidence, the Plaintiff relies on the out-of-district opinion issued in *Coleman v. Barnhart*.  In that case, the court stated that it was "unclear how the ALJ found [the claimant] could meet the threshold physical requirements of medium work, in [the] absence of a physical capacities evaluation [ ] completed by a treating or examining physician,

18

particularly in light of plaintiff's numerous severe impairments."   264 F. Supp. 2d 1007, 1010 (S.D. Ala. 2003).

*Coleman* does not help the Plaintiff here.   Not only is that decision not binding on the Court, "numerous other courts have [ ] disagreed with [its] conclusions[,]" finding that "an ALJ's RFC determination may be upheld even when there is no RFC assessment by a treating or examining physician."   *Beote v. Colvin*, 2013 WL 4096151, at *11 (N.D. Fla. Aug. 13, 2013) (collecting cases); *see also Langley v. Astrue*, 777 F. Supp. 2d 1250, 1257 (N.D. Ala. 2011) (concluding that "[d]istrict court cases such as *Coleman* that attempt to place the burden of proving the claimant's RFC on the Commissioner at step five are inconsistent with the Commissioner's regulations, Supreme Court precedent[,] and unpublished decisions in the [Eleventh] Circuit"). The Plaintiff neither addresses this contrary authority nor establishes that *Coleman* is consistent with Eleventh Circuit precedent.

The Plaintiff's alternative suggestion that the ALJ should have ordered a consultative examination is also groundless.   (Doc. 25 at 30).   While an ALJ has a basic and firmly established obligation to develop a full and fair record of the facts relevant to a claimant's application for benefits, *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007), this duty does not require an ALJ to order a CE wherever there is evidence that a claimant may suffer from a particular impairment.   Rather, an ALJ "may purchase a [CE] to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [him] to make a determination or decision on [a] claim."   20 C.F.R. § 404.1519a.   An ALJ need not exercise this

discretion in favor of ordering a CE, however, "as long as the record contains sufficient evidence for him to make an informed decision." *Ingram*, 496 F.3d at 1269 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)).

In the end, a claimant seeking remand of his case where an ALJ has declined to order a CE must show that the ALJ erred in doing so *and* that the claimant was prejudiced by the ALJ's decision. *Mosley v. Acting Comm'r of Soc. Sec. Admin*, 633 F. App'x 739, 742 (11th Cir. 2015) (citing *Brown*, 44 F.3d at 935). Only where "the record reveals evidentiary gaps which result in unfairness or clear prejudice" may a court find that remand is appropriate. *Id.* (quoting *Brown*, 44 F.3d at 935).

The Plaintiff does not make such a showing here. Instead, he contends only in the most general terms that "the ALJ should have sent [him] out for a physical [CE] to obtain opinion evidence of how his balance problems and dizziness, his shoulder problems, joint pain and hearing loss affected his ability to perform the physical demands of medium work." (Doc. 25 at 30). Such conclusory assertions are insufficient to support a request for remand on this basis.

6.

The Plaintiff's final contention aimed at buttressing his first challenge is that the ALJ's hypotheticals to the VE were incomplete. This contention fails.

As the Eleventh Circuit has explained, an ALJ need not include findings in his hypothetical questions to the VE that he has properly discounted or rejected as unsupported. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam). Here, the Plaintiff does not identify any findings that the ALJ should have

included or excluded from his hypotheticals to the VE.  Because this argument appears to hinge solely on the Plaintiff's prior claims, all of which the Court has found to be without merit, it also lacks merit.  *Id.*

B.

The Plaintiff's second challenge, as noted, is that the ALJ did not properly consider his subjective complaints of pain and other symptoms.   Specifically, the Plaintiff asserts that the ALJ erred by discrediting his reports of "chronic dizziness and balance problems," as well as his "severe anger issues, anxiety and memory problems." (Doc. 25 at 43).  This challenge fails.

The evaluation of a claimant's subjective complaints is governed by the "pain standard."  *Dyer*, 395 F.3d at 1210.  Under this standard, a claimant must show "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain."  *Id.* (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

If a claimant meets the pain standard, the ALJ must then assess the intensity and persistence of the claimant's symptoms to determine how they restrict his capacity to work.  20 C.F.R. § 416.929(c)(3).  The considerations relevant to this analysis include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the

21

claimant takes or has taken to alleviate his pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; (6) any measures the claimant uses or has used to relieve his pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3).

After evaluating "a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed [on appeal] for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (per curiam) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)).  The ALJ, however, "need not cite particular phrases or formulations" in conducting this assessment, so long as the reviewing court can be satisfied that he "considered [the claimant's] medical condition as a whole." *Chatham v. Comm'r of Soc. Sec.*, 764 F. App'x 864, 868 (11th Cir. 2019) (per curiam) (internal quotation marks and citation omitted); *see also Stowe*, 2021 WL 2912477, at *4 (explaining that if an ALJ does not identify specific and adequate reasons for rejecting plaintiff's pain testimony, "the record must be obvious as to the [ALJ's] credibility finding") (citing *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995) (per curiam)).  A reviewing court will not disturb a clearly articulated credibility finding made by an ALJ that is buttressed by substantial evidence.  *Foote*, 67 F.3d at 1562 (citation omitted).

Here, in arriving at his RFC assessment, the ALJ acknowledged the Eleventh Circuit's pain standard, along with his duty to account for "all symptoms and the extent to which [those] symptoms [could] reasonably be accepted as consistent with

22

the objective medical evidence and other evidence, based on the [pertinent legal] requirements." (R. 16) (citations omitted).

In addition, the ALJ referenced the Plaintiff's above-identified complaints and other symptoms as part of his analysis (R. 16–21) and also rendered an express credibility determination, stating:

> the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(R. 17).

In support of this credibility finding, the ALJ summarized the medical notes evidencing that the Plaintiff's condition had improved following his fall from the ladder. These notes included ones from an occupational therapist that demonstrated the Plaintiff had range of motion within functional limits; could drive a vehicle and a motorcycle; exhibited normal physical exams; suffered from only intermittent episodes of vertigo and no severe mental impairments; was able to socialize with friends; and had not been in any violent altercations. (R. 13–22). As such, the ALJ's credibility finding was adequately bolstered by the evidence of record.

The Plaintiff vaguely argues that the ALJ failed to "consider treatment records which document not only the chronicity but also the waxing and waning nature of his dizziness and balance problems." (Doc. 25 at 44). The Plaintiff also broadly contends that his "anger issues, memory problems and anxiety would preclude working with all

others on more than an occasional basis." (Doc. 25 at 44). The Plaintiff, however, does not point to any particular evidence that conflicts with the ALJ's conclusion, and cannot rely on such generalized averments to sustain his burden under the pain standard.

The Plaintiff additionally claims that the ALJ wrongfully discredited his complaints on the grounds that the treatment notes in the record did not reference any severe findings. (Doc. 25 at 45). To support this contention, the Plaintiff cites *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 735–36 (11th Cir. 2017) (per curiam). In that case, the Eleventh Circuit observed:

> [t]he primary function of medical records is to promote communication and recordkeeping for health care personnel. It is not to provide evidence for disability determinations. The mere fact that a doctor's judgments about a claimant's work-related limitations are not expressly reflected in treatment notes does not necessarily mean that the judgments are inconsistent with the treatment notes.

*Sampson*, 694 F. App'x at 735–36 (citations and internal quotation marks omitted).

Based on this reasoning, the Court in *Sampson* found that the ALJ improperly assigned little weight to a treating physician's opinion regarding the claimant's ability to stand and walk during a workday solely because the physician did not advise the claimant to curb those activities in his treatment notes. *Id.* at 735. The Court additionally pointed to the fact that the ALJ did not otherwise explain, nor could the Court discern, why the physician's findings did not support the physician's opinion. *Id.* at 736.

24

*Sampson* is inapposite.  Here, unlike in *Sampson*, the ALJ did not infer that the Plaintiff's reported symptoms were not credible because the treatment notes in the record did not include an opinion regarding the Plaintiff's ability to work.  Instead, the ALJ determined that the medical records were inconsistent with the purported severity of the Plaintiff's subjective complaints.  (R. 18).

Finally, citing *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1997), the Plaintiff quarrels with the ALJ's reliance on the Plaintiff's operation of a car and motorcycle. (Doc. 25)).   In *Callahan*, the Eleventh Circuit stated that it did not believe that "everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability."  125 F.3d at 1441.  In this case, however, the ALJ did not rest his disability determination on "everyday activities of short duration."  *Id.*  Rather, he made a specific finding that that the Plaintiff's allegations of "severe limitations from vertigo [were] not consistent with the evidence [that] shows the [Plaintiff] can drive a car and ride a motorcycle."  (R. 19).   In light of the Plaintiff's specific complaints of vertigo, the ALJ appropriately considered the Plaintiff's ability to engage in these activities.

IV.

In sum, the fact that there may be record evidence favorable to the Plaintiff provides no basis for the Court to overturn the ALJ's decision.  The overall deficiency with the Plaintiff's challenges is that he misapprehends the limited nature of the Court's appellate review, which precludes the Court from "re-weigh[ing] the evidence or substitut[ing] [its] judgment for that [of the Commissioner] . . . even if the evidence

preponderates against" that decision.  *Moore*, 405 F.3d at 1213 (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The role of the Court on appeal instead is simply to assess whether the ALJ based his findings on substantial evidence and applied the proper legal standards.  *Powers v. Heckler*, 738 F.2d 1151, 1152 (11th Cir. 1984) (per curiam); *Gray v. Comm'r of Soc. Sec.*, 2018 WL 3805866, at *2 (M.D. Fla. Aug. 10, 2018) (citing 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002)).  The ALJ met that standard here, and the Plaintiff fails to demonstrate otherwise.  Because the ALJ properly considered the record and the Plaintiff's condition as a whole, reversal and remand is not warranted.

For the foregoing reasons, it is hereby ORDERED:

1.     The Commissioner's decision is affirmed.

2.     The Clerk is directed to enter Judgment in the Defendant's favor and to close the case.

SO ORDERED in Tampa, Florida, this 31st day of August 2021.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

26